**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

v.

**ARTRA GROUP, INC., Defendant.**

**No. 90 C 5358.**

United States District Court,
N.D. Illinois, E.D.

July 31, 1991.

John Secaras, Regional Solicitor of Labor, Leonard A. Grossman, Office of the Regional Solicitor, U.S. Dept. of Labor, Chicago, Ill.

Carol Connor Flowe, General Counsel, Jeanne K. Beck, Deputy General Counsel, James Y. Callear, Asst. General Counsel, Tracy Rickett, Marc A. Tenenbaum, Wash-

ington, D.C., for plaintiff Pension Ben. Guar. Corp.

Paul M. Heylman, Scott Robins, Schmeltzer, Aptaker & Shepard, P.C., Washington, D.C., for defendant Artra Group, Inc.; James E. Beckley, Adler, Kaplan & Begy, Chicago, Ill., of counsel.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

The Pension Benefit Guaranty Corporation ("PBGC") brought this action against defendant Artra Group, Inc. ("Artra") under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA") claiming that Artra is liable to PBGC as the sponsor of a terminated, underfunded single-employer pension plan.

## FACTS

The material facts are not in dispute. Plaintiff PBGC is a wholly-owned United States Government corporation created by 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program established under Title IV of ERISA. Artra is a corporation organized under the laws of Pennsylvania with its principal place of business located in Northfield, Illinois. Artra was known as Dutch Boy, Inc. until it changed its name to Artra on or about December 31, 1980.

On or about June 1, 1971, the Local 1139 UE Group Pension Plan (the "UE Plan") was established to provide retirement benefits to employees of employers who entered into collective bargaining agreements with the United Electrical, Radio and Machine Workers of America (the "Union"). On or about March 17, 1978, Dutch Boy entered into a participation agreement with Local 187 of the Union whereby Dutch Boy became a participating employer in the UE Plan effective January 1, 1978. The Participation Agreement incorporates the UE Plan, making the UE Plan part of the Participation Agreement.

Before Dutch Boy became a participating employer in the UE Plan, the Secretary of the Treasury, through the Internal Revenue Service (the "IRS"), determined the UE Plan to be qualified under section 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a) (hereinafter "section 401(a)"). Favorable determination letters were issued by the IRS on May 24, 1973 and September 1, 1977. After Dutch Boy became a participating employer in the UE Plan, the UE Plan once again requested an IRS qualification letter for the UE Plan. In response, the IRS issued a favorable determination letter on June 11, 1980.

On October 31, 1980, Dutch Boy ceased operations at the Chicago plant where the participating employees were employed. The alleged Dutch Boy Plan was terminated effective December 14, 1980 and PBGC was appointed trustee of the Dutch Boy Plan.[1]

On May 19, 1987, Artra was informed by PBGC that PBGC had determined that Artra was the sponsor of a single-employer pension plan that was underfunded by $27,446.00 as of December 14, 1980, the date the Dutch Boy Plan was terminated. PBGC requested payment of that amount under sections 4062 and 4068 of ERISA, 29 U.S.C. §§ 1362, 1368, plus interest from April 2, 1981.

On February 26, 1990, Artra appealed the determination of liability to PBGC's Appeals Board. On December 6, 1990, the Appeals Board issued a decision finding no basis for changing the PBGC's initial determination, except that the amount of the liability was reduced to $21,783.00.

In September 1990 PBGC filed this action seeking enforcement of PBGC's determination that Artra is liable to PBGC as the sponsor of a terminated, underfunded single-employer pension plan for the principal amount of $21,783.00 plus interest. The parties have filed cross motions for

---

1. Artra denies that a "Dutch Boy Plan" exists or existed. Instead, Artra only admits that Dutch Boy was a participating employer in the UE Plan. Since it is not necessary to determine this issue in light of the court's analysis below, the court will refer to the alleged Dutch Boy Plan as if it existed as a single-employer pension plan.

summary judgment. For the reasons stated below, PBGC's motion for summary judgment is denied and Artra's motion for summary judgment is granted.[2]

## DISCUSSION

■ The parties agree that there are two issues at the center of this dispute. The first issue is whether the Appeals Board correctly determined that the UE Plan was an aggregate of single-employer plans or whether, contrary to the Appeals Board's decision, the UE Plan was one multiemployer plan. If the UE Plan was one multiemployer plan, it is undisputed that Artra has no liability to PBGC. The second issue is whether the Appeals Board correctly determined that the Dutch Boy Plan was covered by Title IV of ERISA. If the Dutch Boy Plan was not covered by Title IV, it is undisputed that Artra is not liable to PBGC. Because the court finds the second issue dispositive of the case, the court need not address the first issue.

### TITLE IV OF ERISA

Under § 4021(a)(2) of ERISA, 29 U.S.C. § 1321(a)(2), a plan is deemed covered by the termination insurance provisions of ERISA where such plan "is, or has been determined by the Secretary of the Treasury to be, a plan described in section 401(a) of the Internal Revenue Code."[3]

The Appeals Board determined that "the Dutch Boy Plan is covered by Title IV of ERISA since it 'has been determined by the Secretary of the Treasury to be ... a plan described in Section 401(a) of the Internal Revenue Code.'" PBGC based its determination on the fact that the IRS previously had found that the UE Plan had qualified under section 401(a) and that Artra, by its Participation Agreement, had "adopted the UE Plan and Trust Agreement as its own plan." (PBGC Appeals Board Determina-

tion, p. 6.) Furthermore, PBGC found that the IRS issued another favorable determination letter to the UE Plan and Trust Agreement in 1980, and that "the Dutch Boy Plan was part of the aggregate [UE] plan" at that time. (Id.)

■ PBGC has alerted the court to the great deference due its interpretation of statutes. The Supreme Court has set forth the general principles to be applied when federal courts review an agency's interpretation of the statute it implements:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based upon a permissible construction of the statute.

*Pension Benefit Guaranty Corp. v. LTV Corp.*, —— U.S. ——, 110 S.Ct. 2668, 2676, 110 L.Ed.2d 579 (1990) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). A "permissible" construction is a construction that is rational and consistent with the statute. *Pension Benefit Guaranty Corp. v. LTV Corp.*, 110 S.Ct. at 2678.

**2.** Because the court finds the briefs sufficient for the purpose of deciding this motion, the parties' joint motion to schedule oral argument is denied.

**3.** Qualification under section 401(a) of the Internal Revenue Code is not the only manner in which a plan may become covered by Title IV of ERISA. *See* 29 U.S.C. § 1321(a)(1). However,

qualification under section 401(a) is the sole manner in which PBGC based its determination that the Dutch Boy Plan is covered by Title IV. Thus, the court need not determine whether the Dutch Boy Plan is covered under Title IV in another way than by its qualification under section 401(a).

Here, PBGC argues that because there is no evidence that Congress had an intention on the precise question at issue, the Court must defer to PBGC's reading of section 4021(a)(2) as long as it is a "permissible construction of the statute." (PBGC Response, p. 10.)

The court believes that PBGC's construction of section 4021(a)(2) of ERISA is contrary to clear congressional intent. In fashioning the various avenues to coverage under Title IV of ERISA, Congress chose the statutory wording "is, or has been determined by the Secretary of the Treasury to be ... a plan described in Section 401(a) of the Internal Revenue Code." Thus, insofar as this means to Title IV coverage is concerned, Congress decided to defer to the requirements as set forth by the Secretary of the Treasury for conferring section 401(a) status. PBGC points to no revenue ruling or procedure, Treasury decision, or other Treasury determination which supports PBGC's position that a single section 401(a) qualification letter issued to an aggregate of single-employer plans establishes section 401(a) status for each of the individual plans which form the aggregate.

If there were no Treasury rulings at all on this issue, the court would be tempted to defer to PBGC's position. However, several revenue procedures plainly reveal that the receipt of section 401(a) status by an aggregate of single-employer plans does not automatically confer section 401(a) status to the component plans. Revenue Procedure 80–30 sets forth

> the general procedures ... pertaining to the issuance of determination letters on the qualification of pension ... plans involving section[ ] 401 ... of the Internal Revenue Code....

Rev.Proc. 80–30, § 1.01, 1980–1 C.B. 686. This Revenue Procedure provides that

> A determination letter issued pursuant to this Revenue Procedure contains only the opinion of the Service as to the qualification of the *particular plan* involving the provisions of section 401, 403(a), and

405(a) of the Code and the status of a related trust, if any, under section 501(a). Rev.Proc. 80–30, § 13.01, 1980–1 C.B. 695 (emphasis added).

Moreover, section 15 of Revenue Procedure 80–30 discusses "areas in which automatic approval as to the qualified or exempt status of an employee plan shall be granted." The section provides that plans adopted or amended as model pension plans, master or prototype plans, standardized form corporate master or prototype plans, and bond purchase plans will be deemed to satisfy the qualification requirements of section 401(a). Rev.Proc. 80–30, § 15.01, 1980–1 C.B. 696.

 Artra does not contend that the Dutch Boy Plan falls within any of the automatic approval categories.[4] Even if the UE Plan were to constitute a "master" or "prototype" pension plan, the Dutch Boy Plan could not gain section 401(a) status simply by relying on the section 401(a) status of the UE Plan. Revenue Procedure 80–29, which sets forth the procedures for the issuance of opinion letters for master and prototype pension plans, states that

> Opinion letters will be issued only to the sponsoring organizations ... and do not constitute rulings or determinations as to either the qualification of the plans as adopted by particular employers or, in the case of prototype plans, the exempt status of related trusts or custodial accounts.

Rev.Proc. 80–29, § 4.01, 1980–1 C.B. 682.

Congress clearly intended for the Secretary of the Treasury's determinations of qualification under section 401(a) to be a route to Title IV coverage. *See* 29 U.S.C. § 1321(a)(2). By deferring to the Secretary's determinations, Congress also intended to defer to the method by which the Secretary makes determinations, embodied in official rulings and procedures of the IRS. The official procedures discussed above do not support PBGC's position that a single section 401(a) qualification letter issued to an aggregate of single-employer plans establishes section 401(a) status for

---

4. In fact, the UE Plan's 1976 and 1979 application for determination under section 401(a) denied that the UE Plan was a master or prototype plan. (R. at pp. 218E, 218M.)

each of the plans. Instead, PBGC's position is contrary to the clear congressional intent found in the coverage provisions of Title IV of ERISA.

The court's conclusion is supported by the only case discussed by the parties on this subject. In *PBGC v. Potash*, 7 E.B.C. 1292, 1299, 1986 WL 3809 (W.D.N.Y.1986), A & P joined the Retail Clerks Regional Pension Fund by executing a counterpart of the Retail Clerks Fund trust agreement and a participation agreement which incorporated rules that restricted the use of plan assets. PBGC found that this execution demonstrated that the A & P Plan satisfied § 4021(a)(2). *Id.* The court held that PBGC's analysis was

> deficient inasmuch as the Internal Revenue Service's determination, prior to A & P's withdrawal from the [Retail Clerks] Fund in 1975, that the Fund was a qualified plan under 26 U.S.C. § 401(a) does not constitute an affirmative determination that the alleged "A & P Plan" had met the requirements of section 401.

*Id.* The court explained that the "specific plans had to meet the requirements of Section 401(a) of the Code and whether or not the [overall] Plan qualified is irrelevant." *Id.*

■ Although not expressed in the Appeals Board determination, PBGC contends that even if the Dutch Boy Plan is not covered by a favorable determination letter, the Dutch Boy Plan is still covered under Title IV because it "is ... a plan described in section 401(a) of the Internal Revenue Code." 29 U.S.C. § 1321(a)(2). In other words, the Dutch Boy Plan may be covered by Title IV without receiving a favorable IRS determination letter if the Plan would have qualified under section 401(a) had the Plan been submitted for such determination.

Artra claims that the Dutch Boy Plan would not qualify under section 401(a) because the Plan fails the "exclusive benefit rule" of the Internal Revenue Code. A trust forming part of a pension plan constitutes a qualified trust

> if under the trust instrument it is impossible, at any time prior to the satisfaction

of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be ... used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries....

26 U.S.C. § 401(a)(2). Income tax regulations interpret this section as a requirement that "the trust instrument must definitely and affirmatively make it impossible for the nonexempt diversion or use to occur." 26 C.F.R. § 1.401-2(a)(2).

PBGC relies on Revenue Ruling 73-446, 1973-2 C.B. 132, which permits all the provisions of the trust to be viewed together in order to make the definite and affirmative showing that the trust prevents the prohibited diversion. PBGC contends that when section 2 of the Participation Agreement is read in conjunction with section 3.02 of the UE Trust Agreement, the Dutch Boy Plan satisfies the exclusive benefit rule. The Participation Agreement states:

> The Parties of this Participation Agreement shall have their funds separate and intact from that of any other group of participants under any other Participation Agreement in the Local 1139 UE Group Pension Fund and shall not have these funds commingled or pooled.

(Participation Agreement, ¶ 2.) The UE Trust Agreement provides:

> The Trust Fund is created, established and maintained, and the Trustees agree to administer it, for the purpose of providing retirement and related benefits for Participants and their beneficiaries and for no other purpose.

(UE Trust Agreement, ¶ 3.02.)

These provisions, individually or in combination, do not prohibit funds from being used for, or diverted to, other purposes than for the exclusive benefit of Dutch Boys' employees or their beneficiaries. Paragraph 2 is a restriction on the funds while the funds remain in the custody of the Dutch Boy Plan. The exclusive benefit rule of section 401(a) requires that the funds not be used for or diverted to an improper purpose. It is possible that the funds be *maintained* separately, as required by paragraph 2, yet still violate the

exclusive benefit rule by permitting the *diversion or use* of the funds for purposes other than the benefit of employees or their beneficiaries. Thus, this provision does not definitely and affirmatively make it impossible for the prohibited diversion or use to occur.

Reading paragraph 2 in conjunction with paragraph 3.02 of the UE Trust Agreement does not alter this conclusion. Paragraph 3.02 requires that the UE Trust Fund be maintained and administered exclusively for the purpose of providing benefits to participants and their beneficiaries. While this provision may satisfy the exclusive benefit rule for the UE Trust Fund, it does not satisfy the exclusive benefit rule for the Dutch Boy Plan. Nothing in paragraph 3.02 requires the Dutch Boy Plan to be maintained and administered exclusively for the purpose of providing benefits to Dutch Boy Plan participants and their beneficiaries.

Therefore, the court believes that the Dutch Boy Plan does not comply with the exclusive benefit rule. Without such compliance, the Dutch Boy Plan is not a plan described in section 401(a) of the Internal Revenue Code. Furthermore, as discussed above, the Dutch Boy Plan has not been determined by the Secretary of the Treasury to be a plan described in section 401(a). Accordingly, the Dutch Boy Plan is not covered by Title IV of ERISA and Artra is not liable to PBGC as the sponsor of a terminated, underfunded single-employer pension plan.

## CONCLUSION

For the reasons discussed above, defendant Artra's motion for summary judgment is GRANTED and plaintiff PBGC's motion for summary judgment is DENIED.